UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JANET MAYER,

        Plaintiff,

    v.                                                                24-CV-67-LJV
                                                                      DECISION & ORDER
STATE UNIVERSITY OF NEW
YORK AT FREDONIA, et al.,

        Defendants.

---

On January 17, 2024, the plaintiff, Janet Mayer, commenced this action against

the State University of New York at Fredonia ("SUNY Fredonia"), Benjamin Hartung,

and Michael Metzger (collectively, "the defendants"). Docket Item 1. Mayer alleges that

the defendants discriminated against her on the basis of sex in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), discriminated against her on the basis of

disability in violation of the Americans with Disabilities Act ("ADA"), and retaliated

against her in violation of Title VII. *Id*. She also seeks relief under 42 U.S.C. § 1983,

alleging that the defendants violated her rights to due process and equal protection. *Id.*

After receiving an extension of time to serve the summonses and complaint, *see* Docket

Item 4, Mayer served SUNY Fredonia and Hartung in June 2024, *see* Docket Items 5

and 6. To date, Mayer has not filed an affidavit indicating that Metzger has been

served, and the time to serve him has passed. *See* Docket Item 4.

On October 18, 2024, SUNY Fredonia and Hartung (collectively, "the moving

defendants") moved to dismiss the second (ADA violation), third (Title VII retaliation),

and fifth (equal protection) causes of action.[1]  Docket Items 9 (notice of motion) and 9-1 (memorandum of law).  After Mayer responded to the partial motion to dismiss, Docket Item 14, the moving defendants replied, Docket Item 15.

For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.  More specifically, the Court grants the motion as to the ADA claim, the equal protection claim against Hartung in his official capacity, and the Title VII claim against Hartung; the Court denies the motion with respect to the equal protection claim against Hartung in his individual capacity and the Title VII retaliation claim against SUNY Fredonia.  This decision is without prejudice, however, to Mayer's moving on or before April 30, 2026, to amend her complaint to correct the deficiencies identified below.  The Court also orders Mayer to show cause on or before April 30, 2026, why the complaint should not be dismissed without prejudice against Metzger for failure to effect timely service.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); Docket Item 4 (setting deadline of July 8, 2024, for service of summonses and complaint).

---

[1] Hartung also moved to dismiss the first cause of action (Title VII sex discrimination) against him.  Docket Item 9-1 at 9.  In response, Mayer conceded that "individuals cannot be sued under Title VII."  Docket Item 14 at 7 (bold and some capitalization omitted).  The Cout therefore dismisses the first cause of action against Hartung.

**FACTUAL BACKGROUND**[2]

On December 2, 2004, SUNY Fredonia hired Mayer as an Educational Technologist in the Library Department.  Docket Item 1 ¶¶ 12, 16.  On June 18, 2007, she suffered a stroke, which resulted in "Lateral Medullary Syndrome."  *Id.* ¶ 13.  The following year, she transferred to SUNY Fredonia's department of Information Technology Services ("ITS") as Program Manager.  *Id.* ¶ 21.  In 2010, Mayer became a supervisor, but SUNY Fredonia "denied [her] a salary adjustment to reflect her new supervisory role."  *Id.* ¶ 22.  Meanwhile, "male employees Kevin Lane, Michael Gerholdt, and Tylor Cardone, all IT managers, received raises when [they were] made supervisor[s]."  *Id.* ¶ 23.

In 2014, Mayer "received a new supervisor, CIO Benjamin Hartung."[3]  *Id.* at ¶ 25.  Hartung directed Mayer "to create new frameworks while bullying her incessantly about completing them, only to then take over her projects."  *Id.* ¶ 26(a).  He also removed Mayer "from working on the systems she built for SUNY [Fredonia], including Moodle and OnBase, remove[d] other primary duties, remov[ed] her management responsibilities, and chang[ed] her supervisor without telling her directly, but rather at a staff meeting."  *Id.* ¶ 26(b).  Hartung gave her "no new work assignments," so that she was "basically isolated from the rest of the ITS."  *Id.* ¶ 26(c).  He "also moved . . . Mayer

---

[2] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

[3] Although Mayer does not specify, the Court assumes "CIO" refers to "Chief Information Officer."

away to another office, in another building, literally as far away as he could from the rest of the ITS technical staff." *Id.* ¶ 26(d).

In 2015, SUNY Fredonia hired a new CIO, Steve Rieks, who became Mayer's new supervisor. *Id.* ¶¶ 27-28. Rieks restored Mayer's project management and supervisory duties. *Id.* ¶ 30. "Despite [Mayer's] getting her old job duties back," however, "Rieks gave each similarly[ ]situated male manger a significant raise, but not . . . Mayer." *Id.* ¶ 31. In addition, in 2018, Mayer "worked on two Extra Service Pay ('ESP') projects, but received no ESP," whereas male employees received ESP. *Id.* ¶¶ 35-38.

In March 2019, Mayer was promoted to Manager of University Policy, *id.* ¶ 39; nevertheless, "[s]he was given significantly less of a raise than her male managers, who did not receive significant new duties," *id.* ¶ 40. At about the same time, Riecks started to make unwelcome sexual advances towards Mayer, which "continued until the summer of 2020." *Id.* ¶¶ 41-44.

On July 10, 2020, Mayer was interviewed as part of an internal sexual harassment investigation into Rieks's behavior. *Id.* ¶ 48. Among other things, "Mayer reluctantly disclosed" that Rieks had sexually harassed her. *Id.* ¶ 49. SUNY Fredonia then made Hartung the "interim CIO" and Mayer's interim supervisor. *Id.* ¶¶ 48, 53.

In October 2020, "Hartung tried to change the ITS organizational chart by moving . . . Mayer to the same level as the other (male) managers, making her a department of one." *Id.* ¶ 57. But "Mayer challenged this transfer and she was returned to her prior place in the chart." *Id.* ¶ 58. "Mayer was the only female manager and the only employee to have their [sic] position changed on the chart." *Id.* ¶ 59.

In January 2021, Hartung told "Mayer that having her office within ITS was a 'risk.'"  *Id.* ¶ 60.  He "offered no clarification about this alleged risk other than it did not 'fit.'"  *Id.* ¶ 61.  Mayer interpreted the "risk" as relating to her complaint to human resources about Rieks's sexual harassment.  *Id.* ¶ 62.

On March 2, 2021, Metzger and Hartung informed Mayer that she would be leaving ITS to become the new "Director of Contracts" in the purchasing department, which included being assigned a new supervisor.  *Id.* ¶ 64.  She told them "that she was not interested in the [new] position, as she had no experience in contract review."  *Id.* ¶ 65.  As "a long-time stroke survivor," Mayer "knew [that] transitioning to an entirely new position outside . . . her field . . . would create difficulties . . . given the cognitive challenges she suffered from her stroke."  *Id.* ¶ 69.

Nonetheless, on April 1, 2021, Mayer moved into her new position with a new supervisor, Terry Tzitzis.  *Id.* ¶ 81.  This move cause Mayer public humiliation because she "was unable to explain why [she had been moved] to her campus colleagues."  *Id.* ¶ 78.

Tzitzis failed to train Mayer and required her to perform secretarial tasks including "emailing . . ., searching for paper files, and updating PDF documents."  *Id.* ¶ 81.  Due to the lack of training, Mayer felt enormous stress, and, as "a stroke survivor," she "felt sick from the hostile work environment."  *Id.* ¶ 90.  She also was excluded from meetings and relegated to office space in the file room.  *Id.* ¶¶ 83, 93.  Additionally, she did not receive "compression pay,"[4] which she had received a

---

[4] The complaint does not explain exactly what "compression pay" is except to say that it is required by union contracts for certain positions.  *See* Docket Item 1 ¶ 94.

significant amount of in her prior position. *Id.* ¶ 94. To date, "Mayer continues in her demoted role." *Id.* ¶ 95. As a result, she suffers from headaches as well as several other mental, emotional, and physical ailments. *Id.* ¶¶ 98-103.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION[5]

### I.    ADA CLAIM

The moving defendants argue that Mayer's ADA claim must be dismissed because she has failed to allege how her stroke and Lateral Medullary Syndrome affect

---

[5] SUNY Fredonia and Hartung's motion addresses only the claims against them, so this Court analyzes only the claims against those two defendants. As noted above, Mayer has not served Metzger, and the time to do so has passed. Thus, the claims against Metzger will be dismissed for failure to effect timely service unless Mayer shows cause why they should not be. If she does show cause why the claims against Metzger should not be dismissed on that basis, the Court will evaluate those claims in due course.

her major life activities, as is required to allege a disability under the ADA.  *See* Docket Item 9-1 at 6-8.[6]  This Court agrees.

To state a prima facie case of discrimination under the ADA, a plaintiff must show that:  (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment."  42 U.S.C. § 12102(1).

In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives"; in addition, the Court held, the "impairment's impact must also be permanent or long term."  534 U.S. 184, 198 (2002).  But in 2008, after finding that the Supreme Court in *Toyota* "interpreted . . . 'substantially limits' to require a greater degree of limitation than" it had intended, Congress amended the ADA.  ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(7), 122 Stat. 3553, 3553.  Among other things, the amendments "reject[ed] the standards enunciated by the Supreme Court in [*Toyota*]."  *Id.* § 2(b)(4).

---

[6] Page numbers in docket citations refer to ECF pagination.

The amended statute now provides the following non-exhaustive list of major life activities: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* § 12102(4)(C). Although the term "'[s]ubstantially limits' is not meant to be a demanding standard," *see* 29 C.F.R. § 1630.2(j)(1)(i), "[i]t is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations," *Collins v. Giving Back Fund*, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc.*, 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)). And "a plaintiff [must] do more than simply allude to her impairments in her pleading; she must plead *how* those impairments significantly impacted her major life activities, or she will not survive a motion to dismiss." *Id.*; *see also Giallanza v. Time Warner Cable*, 2009 WL 857502, at *7 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act.").

Mayer has alleged that she "experienced a stroke, resulting in Lateral Medullary Syndrome." Docket Item 1 ¶ 13. But she has not pleaded any facts demonstrating that her stroke or resulting Lateral Medullary Syndrome substantially limit her ability to perform any major life activity. They may well do so, but this Court's analysis at this stage is limited to the four corners of the complaint. *See Ashcroft*, 556 U.S. at 678. Mayer therefore has not pleaded that she has a disability within the meaning of the

ADA. *See Giallanza*, 2009 WL 857502, at *7; *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled.").

That being said, because Mayer may well have facts that she can add to her complaint detailing how her impairments limit a major life activity, her ADA claim is dismissed without prejudice to her moving to amend her complaint. Any such motion must be filed on or before April 30, 2026, and must attach a redlined proposed amended complaint correcting the deficiencies noted above, as well as a memorandum of law explaining why such amendment is not futile.

## II.    TITLE VII RETALIATION

### A.    Claim Against Hartung

As noted above, *see supra* note 1, Mayer concedes that she cannot bring a Title VII claim against individual defendants. Docket Item 14 at 7. Her Title VII retaliation claim against Hartung therefore is dismissed.

### B.    Retaliation Claim Against SUNY Fredonia

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that (1) she engaged in protected activity; (2) [her] employer was aware of that activity; (3) [she] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation and internal quotation marks omitted). "A plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of

9

discrimination; or (3) participates in an investigation, proceeding[,] or hearing arising under Title VII." *Davis v. N.Y. State Dep't of Corr.*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (citation and internal quotation marks omitted).

The moving defendants do not dispute that Mayer engaged in a protected activity by participating in the internal sexual harassment investigation and disclosing that she had been sexually harassed. *See* Docket Item 9-1 at 10. But, they say, Mayer "is unable to satisfy the remaining two elements." *Id.* More specifically, they say that her transfer to another department was not an adverse action and that even if it was, Mayer has not established a causal connection with her participation in the investigation. *Id.* at 10-11. This Court disagrees.

First, although it is true that a transfer is not necessarily an adverse action, it can be if the transfer is "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Here, Mayer alleges that she was "demoted" to a new role that, unlike her prior position, was not eligible for "compression pay." Docket Item 1 ¶¶ 94-95. At the pleading stage, that is enough.

The harder question is whether Mayer has adequately alleged causation. As the moving defendants observe, there was a gap of nearly eight months between her reporting sexual harassment and the alleged demotion. Docket Item 9-1 at 11. And "[t]emporal proximity alone is generally insufficient after about three months." *Berrie v. Bd. of Educ.*, 750 F. App'x 41, 49 (2d Cir. 2018) (summary order) (citing *Hollander v.*

10

*Am. Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir. 1990))*; but see Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 555 (2d Cir. 2001)). Here, however, the Court need not decide whether the eight-month temporal proximity alone is sufficient:  Mayer also says that Hartung told her she was a "risk" to the department.  Docket Item 1 ¶ 151.  Of course, the Court accepts that allegation as true. *See Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,* 843 F.3d 561, 566 (2d Cir. 2016).  The Court also agrees with Mayer that—drawing all inferences in her favor, as it must, *see id.*—that comment "is evidence of retaliatory intent," *see* Docket Item 1 ¶ 154.  And "[w]here a plaintiff relies on both temporal proximity and other forms of evidence, . . . the lapse in time between the protected activity and adverse action can be longer." *Ziparo v. CSX Transp., Inc.,* 160 F.4th 314, 336 (2d Cir. 2025) (citation and internal quotation marks omitted).

What is more, Mayer alleges that in October 2020—only three months after the protected activity—Hartung attempted to "change the ITS organizational chart" to make "her a department of one."  Docket Item 1 ¶ 57.  Although Hartung was not successful in doing so, *id.* ¶ 58, that also closes the eight-month gap.  Drawing all inferences in Mayer's favor, it is reasonable to conclude that Hartung tried to retaliate against Mayer within the department, and after that was unsuccessful, transferred her outside the department.

All in all, the Court finds there is enough at the pleading stage to allow the retaliation claim to proceed. Whether Mayer can produce evidence of causation sufficient to survive a motion for summary judgment is a question for another day. But for now, Mayer's Title VII retaliation claim against SUNY Fredonia can proceed.

## III.    EQUAL PROTECTION CLAIM

### A.    Official Capacity Claim Against Hartung

Mayer "agrees that her equal protection claim against . . . Hartung in his official capacity is barred by sovereign immunity and should be dismissed." Docket Item 14 at 7 (bold and some capitalization omitted). This Court agrees as well and therefore dismisses that claim against Hartung.

### B.    Claims Against Hartung in His Individual Capacity

The complaint alleges that Hartung violated Mayer's right to equal protection by "[s]ubject[ing] her to a hostile work environment based on sex," "retaliat[ing] against her for complaining about said hostile work environment," and "[d]emot[ing] her to a less desirable and less remunerative position than male co-workers." Docket Item 1 ¶ 170. The moving defendants' argument focuses on the retaliation portion of the claim.[7] *See* Docket Item 9-1 at 12-13.

"[T]he elements of a retaliation claim based on an equal protection violation under [section] 1983 mirror those under Title VII." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). So "for a retaliation claim under [section] 1983 to

---

[7] The moving defendants have not sought to dismiss Mayer's Title VII discrimination claim. *See generally* Docket Item 9-1.

survive a . . . motion to dismiss, the plaintiff must plausibly allege" that the "defendants acted under the color of state law[ and that the] defendants took adverse employment action against [her] because [she] complained of or otherwise opposed discrimination." *Id.* "[F]or an adverse retaliatory action to be 'because'" of the plaintiff's activity, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

The moving defendants again argue that there is insufficient temporal proximity to infer a causal connection. *See* Docket Item 9-1 at 13; Docket Item 15 at 5-6. This Court rejects this argument for the same reason it did for Mayer's Title VII retaliation claim: Even if the eight-month temporal proximity alone would not be enough, Hartung's alleged comment regarding Mayer's being a "risk" and his earlier attempt to change the organizational chart add to the calculus are sufficient at this stage. So for the same reason that Mayer's Title VII retaliation claim survives, there is enough for the equal protection claim to proceed past the pleading stage.

## CONCLUSION

For all those reasons, this Court GRANTS IN PART and DENIES IN PART the moving defendants' motion to dismiss, Docket Item 9. More specifically, the Court GRANTS the motion as to the ADA claim, the equal protection claim against Hartung in his official capacity, and the Title VII claims against Hartung; the Court DENIES the motion with respect to the equal protection claim against Hartung in his individual capacity and the Title VII retaliation claim against SUNY Fredonia. This decision is without prejudice, however, to Mayer's moving on or before **April 30, 2026**, to amend

13

her complaint to correct the deficiencies in her ADA claim.  Any such motion must attach a redlined proposed amended complaint correcting the deficiencies noted above as well as a memorandum of law explaining why such amendment is not futile.  The moving defendants' time to answer the complaint is tolled until this Court decides Mayer's motion to amend or, if Mayer does not move to amend, until **May 21, 2026**.

The Court also orders Mayer to show cause on or before **April 30, 2026**, why the complaint should not be dismissed without prejudice against Metzger for failure to effect timely service.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); Docket Item 4 (setting deadline of July 8, 2024, for service of summonses and complaint).

SO ORDERED.

Dated:   March 30, 2026
          Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE